UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
LARRY W. BRYANT,                   )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   Civ. Action No. 09-0940 (EGS)
                                   )
CENTRAL INTELLIGENCE AGENCY,       )
ET AL.                             )
                                   )
        Defendants.                )
_____)

**MEMORANDUM OPINION**

Pending before the Court in this Freedom of Information Act case is defendants' motion for partial summary judgment. Upon consideration of the motion, the response and reply thereto, the applicable law, the entire record, and for the reasons set forth below, the defendants' motion for partial summary judgment is hereby **GRANTED**.

I.  BACKGROUND

    A.  **The Initial FOIA Request and Complaint**

Plaintiff describes himself as the Director of the Washington D.C. Office of Citizens Against UFO Secrecy who "gathers, researches, and publishes documents and information and analysis concerning Unidentified Flying Objects." Compl. ¶ 4. In addition, plaintiff is a columnist for the monthly periodical *UFO Magazine*. Compl. ¶ 4. In August of 2008 the plaintiff sent the Central Intelligence Agency ("CIA") a request for information

under the Freedom of Information Act ("FOIA").  In particular, plaintiff requested "CIA-received and CIA-generated records as pertain to. . . cases of airborne UFO encounters reportedly occurring since Nov. 17, 1986."  Compl. Ex. A.  Plaintiff also specifically requested information relating to "a 1987 special meeting at FAA headquarters in Washington D.C. to discuss and evaluate certain official evidence of the intrusive UFO encounter experienced on Nov. 17, 1986 by the Japanese flight crew (No. 1628) of a 747 cargo jet."  Compl. Ex. A.  In the same request, he asked to be granted status as a representative of the news media and thereby be exempt from certain fees typically charged for a FOIA request.  Compl. Ex. A.

In their response to plaintiff's FOIA request, the CIA offered to provide the plaintiff with 2,779 pages of materials at the cost of $267.90, describing the materials as records already located in response to "numerous previous request[s]" for information regarding UFOs.  Compl. Ex. B.  Plaintiff's request for a fee waiver was denied on the grounds that "the information [plaintiff] seek[s] is already in the public domain and its re-release would not likely contribute significantly to public understanding of the operations and activities of the United States Government."  Compl. Ex. B.  Plaintiff appealed the agency's decision, including the denial of the request for a fee waiver.  Compl. Ex. C.  The CIA again denied the request for a

fee waiver.  Compl. Ex. D.  In their letter denying the appeal, the CIA also explained that plaintiff would be charged the $267.90 irrespective of whether he was placed in the news media fee category.[1]  Compl. Ex. D.

Plaintiff brought this action on May 20, 2009.  The first count[2] of the Complaint alleges that defendants "did not use the level of diligence and good faith" in responding to his request and that defendants "conducted no search to respond to Plaintiff's FOIA Request."  Compl. ¶ 12.  The second count alleges that, as a representative of the news media, he is entitled to a waiver of all fees except photocopying fees associated with his FOIA request.  Compl. ¶ 17.  Plaintiff

---

[1] More particularly, the CIA explained that "since records responsive to the subject of your request have been previously released, and no additional searches were conducted following receipt of your request, you would be responsible for copying costs associated with this request regardless of fee category determination. . . .  [C]opying costs are ten cents per page less the first 100 pages.  These copying fees would apply even if we were to place you into the . . . news media fee category." Compl. Ex. D.

[2] The Complaint contains three counts.  The first two are labeled identically as "Count II" and both are titled "News Media Representative Status."  The Court assumes that the first "Count II" was erroneously labeled and intended by the Plaintiff to be the first count.  Furthermore, the Court assumes that the first count was also incorrectly titled since the paragraphs therein relate to the allegation that defendants "conducted no search to respond to Plaintiff's FOIA Request" rather than to the news media representative status that is the subject of the allegations in the second count.  The third count is a demand for attorneys' fees.

further contends that defendants used an improperly narrow definition of "news media representative status" when they refused to grant him such status. Compl. ¶ 19. Plaintiff seeks a declaration that he was improperly denied news media representative status, an order that the defendants grant him such status, and damages including attorneys fees. Compl. ¶ 6.

**B.    Reopening of Plaintiff's FOIA Request**

On June 23, 2009, roughly one month after plaintiff filed this lawsuit, the CIA sent a letter to plaintiff informing plaintiff that, (i) the CIA would reopen his FOIA request, (ii) the CIA would conduct another search for records in existence through June 15, 2009, and (iii) the CIA would place the plaintiff in the news media fee category and only charge him for photocopying costs. Defs.' Summ. J. Mot. Ex. E. According to defendants, new searches were then conducted for responsive information, and the CIA followed up with another letter dated October 21, 2009. Defs.' Summ. J. Mot. Ex. E.

The October 21st letter informed the plaintiff that new materials responsive to his general request had been located. Defs.' Summ. J. Mot. Ex. F. However, because the newly-identified responsive materials were not "originated by the CIA," the request would need to be referred to the originating agencies. Defs.' Summ. J. Mot. Ex. F. Plaintiff received subsequent FOIA response letters from the NSA and the Department

4

of State regarding these additional materials, including five pages of materials with redactions from the Department of State. Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 36.

In their pending motion for partial summary judgment[3], defendants seek a ruling that they fulfilled their FOIA obligations in conducting a reasonably diligent search.  In addition, they argue that plaintiff's second count is moot because plaintiff was placed in the media fee category subsequent to the filing of the complaint.

## II. STANDARD OF REVIEW

The Court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own

---

[3] Defendants have moved only for partial summary judgment because they agree that plaintiff maintains the right to challenge the decisions by the NSA and the Department of State to redact or withhold any of the documents referred to them.  (As discussed above, a few pages responsive to plaintiff's request were forwarded to these other agencies for a determination because the CIA concluded the documents "originated" from them.)

5

affidavits or declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on the information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agency affidavits must be "relatively detailed and non-conclusory").

**III. ANALYSIS**

Three issues are raised by defendants' motion for partial summary judgment and plaintiff's opposition thereto.  First, the Court must address whether defendant has failed to conduct a reasonably diligent search such that permitting plaintiff to conduct further discovery would be necessary.  Second, the Court must consider defendants' argument that plaintiff's second claim, relating to the news media representative status, is moot.  Finally the Court must consider whether an award of attorneys' fees to plaintiff is appropriate.  For the reasons discussed below, the Court concludes that the defendants prevail on all

6

three of these issues. Each argument will now be discussed in turn.

> **A. Defendants Have Provided Sufficient Evidence of the Completeness of Their Search, and Discovery in this Case is Unwarranted**

Although an agency bears the burden of showing that its search in response to a FOIA request was sufficiently diligent, affidavits or declarations by agency officials may provide sufficient evidence to warrant summary judgment. In particular, courts may rely on agency affidavits so long as they are reasonably detailed and there is no evidence they are being offered in bad faith. *See, e.g.*, *SafeCard Servs., Inc*. 926 F.2d at 1200; *Military Audit Project*, 656 F.2d at 738. Furthermore, "agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc.* 926 F.2d at 1200 (internal quotation omitted).

In support of its claim that it conducted a reasonably diligent search, the CIA has submitted the declaration of Delores Nelson, the Information & Privacy Coordinator of the CIA. Ms. Nelson's declaration provides a detailed description of the various departments within the CIA, the type of records each department maintains, the procedures the CIA uses to process FOIA requests generally, the specific steps taken to respond to plaintiff's request, and the search terms used to accomplish the

7

search for documents responsive to plaintiff's request. Plaintiff "disputes the reliability, accuracy, and credibility of Defendant's sole witness[] (Delores Nelson)." Pl.'s Opp'n at 9. He further argues that Ms. Nelson's declaration is inadequate because it "makes sweeping and insufficiently supported statements about the systems, procedures and policies used by the CIA." Pl.'s Opp'n at 9. Finally, plaintiff questions whether Ms. Nelson is a suitable affiant, with personal knowledge, and states that discovery is necessary to evaluate the worth of Ms. Nelson's declaration. Pl.'s Opp'n at 9.

In support of his position, plaintiff relies on *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365 (D.C. Cir. 1980). In that case, the court did indeed conclude that "the Department's demonstration that it disclosed all available material within the scope of plaintiff's request was inadequate for purposes of summary judgment." *Id.* at 366 (quotation omitted). However, the affidavit relied upon by the defendant in *Weisberg* was substantially different than the one relied upon in the instant case. The affidavit in *Weisberg* simply stated that the affiant "'has conducted a review of FBI files which would contain information that [plaintiff] has requested. . . . The FBI files to the best of my knowledge do not include any information requested by [plaintiff] other than the information made available to him.'" Not surprisingly, the court in *Weisberg* held

8

that the affidavit gave "no detail as to the scope of the examination and thus is insufficient as a matter of law to establish its completeness."  *Id*.

In contrast, the declaration provided by the CIA in the instant case offers seventeen pages of detail regarding the type of records the CIA maintains, the procedures the CIA uses to process FOIA requests generally, the specific steps taken to respond to plaintiff's request, and the search terms used to accomplish the search for documents responsive to plaintiff's request.  Defs.' Mem. Ex. G, Declaration of Dolores Nelson ("Nelson Decl.")  Furthermore, Ms. Nelson is responsible for supervising and coordinating FOIA requests, and she can therefore be relied upon as an individual with personal knowledge.  Nelson Decl. ¶¶ 1-5.  The agency affidavit in the instant case is entitled to substantial weight.

In light of the Court's conclusion that the declaration submitted by the defendants is sufficient to support their motion, the plaintiff is not entitled to further discovery.

### B. Plaintiff's Second Claim is Moot

Defendants argue that plaintiff's second claim, relating to the CIA's initial denial of news media representative status is moot because, in their October 21, 2009 letter to plaintiff, the CIA granted plaintiff such status.  The Court agrees.  Plaintiff himself admits that he has been granted news media representative

9

status. *See* Plaintiff Decl. ¶ 2 ("The CIA initially denied me news media representative status under the Freedom of Information Act as regards the instant civil litigation, and did not grant me such status until after I filed the instant Complaint."). Contrary to plaintiff's assertions that his claim is not moot because he was only granted news media representative status after the complaint was filed, the timing of the CIA's decision to grant him the status is irrelevant. *See Montgomery Envtl. Coal. v. Costle*, 646 F.2d 568, 579 (D.C. Cir. 1980) ("federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.") (quoting *North Carolina v. Rice*, 404 U.S. 244,246 (1971)).

### C. **Plaintiff is not Entitled to Attorneys' Fees**

Plaintiff also seeks an award of attorneys fees pursuant to 5 U.S.C. § 552(a)(4)(E).[4] He argues that attorneys fees should be awarded "because before filing his Complaint he found the news media representative status denial to be a hurdle to his submitting FOIA requests to the CIA." Pl.'s Opp'n at 10.

---

[4] 5 U.S.C. § 552(a)(4)(E) provides: "(i) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either-- (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."

10

However, even assuming granting the plaintiff this status is a "voluntary or unilateral change in position by the agency" within the meaning of 5 U.S.C. § 552(a)(4)(E), the statute also requires that the change in position by the agency be "not insubstantial." *Id.* In making this determination, district courts are to consider "at least four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citations omitted). Applying the standard laid out in *Davy*, the plaintiff has failed to show he is entitled to attorneys' fees.

**IV. CONCLUSION**

For the foregoing reasons, it is hereby ordered that defendants' motion for partial summary judgment is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

**SIGNED:** **Emmet G. Sullivan**
**United States District Court Judge**
**September 30, 2010**