UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
LARRY W. BRYANT,                    )
                                    )
     Plaintiff,                     )
                                    )
     v.                             )    Civ. Action No. 09-0940 (EGS)
                                    )
CENTRAL INTELLIGENCE AGENCY,        )
*et al.*                            )
                                    )
     Defendants.                    )
_____)

## MEMORANDUM OPINION

This matter is before the Court on plaintiff's motion for reconsideration[1] of the Court's denial of his request for attorneys' fees. Upon consideration of the motion, the response and reply thereto, the applicable law, the entire record, and for the reasons set forth below, the plaintiff's motion is **DENIED**.

I.   BACKGROUND

As set forth in this Court's prior Memorandum Opinion, plaintiff Larry Bryant "gathers, researches, and publishes documents and information and analysis concerning Unidentified

---

[1] Plaintiff, though he asks the Court to "reconsider" the denial of attorneys' fees, styles his motion as one to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Due to the interlocutory nature of the Court's earlier ruling, however, plaintiff's motion is properly considered under Rule 54(b), not Rule 59.

Flying Objects" as the Director of the Washington D.C. Office of Citizens Against UFO Secrecy and writes for the monthly periodical UFO Magazine.  Compl. ¶ 4.  In 2008, plaintiff sent the Central Intelligence Agency ("CIA") a request for information under the Freedom of Information Act ("FOIA") requesting "CIA-received and CIA-generated records as pertain to . . . cases of airborne UFO encounters reportedly occurring since Nov. 17, 1986" and records relating to "a 1987 special meeting at FAA headquarters in Washington D.C. to discuss and evaluate certain official evidence of the intrusive UFO encounter experienced on Nov. 17, 1986 by the Japanese flight crew (No. 1628) of a 747 cargo jet."  Compl. Ex. A.  In the same request, he asked to be granted status as a representative of the news media and thereby be exempt from certain fees typically charged for a FOIA request.  Compl. Ex. A.

In their response to plaintiff's FOIA request, the CIA offered to provide the plaintiff with 2,779 pages of materials for $267.90 in copying costs, describing the materials as records already located in response to "numerous previous request[s]" for information regarding UFOs.  Compl. Ex. B. Plaintiff's request for a fee waiver was denied on the grounds that the information sought was "already in the public domain and its re-release would not likely contribute significantly to public understanding of the operations and activities of the

United States Government." Compl. Ex. B. Plaintiff appealed the agency's decision, including the denial of the request for a fee waiver. Compl. Ex. C. The CIA again denied the request for a fee waiver. Compl. Ex. D. In their letter denying the appeal, the CIA also explained that plaintiff would be charged the $267.90 in copying costs irrespective of whether he was placed in the news media fee category. Compl. Ex. D.

Plaintiff commenced this lawsuit on May 20, 2009. On June 23, 2009, the CIA sent a letter to plaintiff informing plaintiff that, (i) the CIA would reopen his FOIA request, (ii) the CIA would conduct another search for records in existence through June 15, 2009, and (iii) the CIA would place the plaintiff in the news media fee category and only charge him for photocopying costs. Defs.' Summ. J. Mot. Ex. E. According to defendants, new searches were then conducted for responsive information, and the CIA followed up with another letter dated October 21, 2009. Defs.' Summ. J. Mot. Ex. E.

The October 21st letter informed the plaintiff that new materials responsive to his general request had been located. Defs.' Summ. J. Mot. Ex. F. However, because the newly-identified responsive materials were not "originated by the CIA," the request would need to be referred to the originating agencies. Defs.' Summ. J. Mot. Ex. F. Plaintiff received subsequent FOIA response letters from the NSA and the Department

of State regarding these additional materials, including five pages of materials with redactions from the Department of State. Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 36.

On September 30, 2010, the Court granted partial summary judgment to defendants, finding that defendants fulfilled their FOIA obligations in conducting a reasonably diligent search and that the second count in the complaint, relating the news media fee category, was moot.  The Court also denied plaintiff's request for attorneys' fees.  In the pending motion, plaintiff seeks reconsideration of this denial of attorneys' fees.

## II.  STANDARD OF REVIEW

A district court may revise its own interlocutory rulings "at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  Due to the interlocutory nature of the Court's earlier ruling, plaintiff's motion for reconsideration is governed by Federal Rule of Civil Procedure 54(b), which "differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)." *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008)(citations omitted).  "In particular, reconsideration of an interlocutory decision is available under the standard 'as justice requires.'" *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (citations omitted).

"'As justice requires' indicates concrete considerations" by the court, *Williams*, 569 F. Supp. 2d at 108, such as "whether the court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *Id. In Def. of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (internal citation and quotation marks omitted). "Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider." *Id.* at 76. "These considerations leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether reconsideration is necessary under the relevant circumstances.'" *Judicial Watch*, 466 F. Supp. 2d at 123 (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).

Plaintiff asks the Court to reconsider the denial of an award of attorneys' fees.  Though plaintiff does not explicitly state so, he appears to base his motion on an argument that the Court failed to consider controlling precedent.  For the reasons stated below, the Court **DENIES** plaintiff's motion for reconsideration.

## III. ANALYSIS

In a FOIA action, courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  In determining whether an award of attorneys' fees is appropriate, courts employ a two-pronged analysis.  First, "[t]he eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees."  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).  With respect to this first prong, the statute defines substantially prevails as relief obtained either (1) through "a judicial order, or an enforceable written agreement, or consent decree," or (2) through a "voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).

If a plaintiff is "eligible" for attorneys fees, the court proceeds to the second prong, *i.e.* the "entitlement prong," and "considers a variety of factors to determine whether the plaintiff *should* receive fees."  *Brayton*, 641 F.3d at 524.  Specifically, the Court considers, "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the

records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citations omitted). The decision to award attorneys' fees and costs is left to the Court's discretion after consideration of the relevant factors. *See Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 705-06 (D.C. Cir. 1977) (stating that § 552(a)(4)(E) "contemplates a reasoned exercise of the courts' discretion taking into account all relevant factors").

The first factor, the public benefit derived from the case, "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159 (citing *Chesapeake Bay Found. v. USDA*, 108 F.3d 375, 377 (D.C. Cir. 1997)). "The public-benefit prong speaks for an award of attorneys' fees where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). *see also Horsehead Indus. Inc. v. U.S. EPA*, 999 F. Supp. 59, 68 (D.D.C. 1998) ("The inquiry is furthered by considering the likely degree of dissemination and the public impact that can be expected from a particular disclosure, but it is the benefit that derives from the litigation not simply the request that is considered.") (internal citations omitted).

7

In assessing the public benefit derived from the case, the Court "*evaluate[s] the specific documents at issue in the case at hand.*" *Cotton*, 63 F.3d at 1120 (emphasis added). The crucial defect in plaintiff's request for attorneys' fees is that plaintiff, in both the initial request and again in this motion for reconsideration, fails to provide the Court with any basis for determining that the specific documents he obtained as a consequence of this litigation confer some benefit to the public. It is undisputed that plaintiff obtained, in total, "two excised documents totaling five pages" from the Department of State, Pl.'s Statement of Material Facts ¶ 36; all other materials were offered to plaintiff before he commenced his lawsuit. Plaintiff, other than making generic assertions that a public benefit was derived from this case because the CIA "turned over additional documents," does not articulate any reason the public derives any benefit from the particular information he obtained.

By comparison, the Circuit in *Davy* concluded, after evaluating the specific documents obtained by plaintiff in that case, that:

> The information [plaintiff] requested -- about individuals allegedly involved in President Kennedy's assassination -- serves a public benefit. At least one of the requested documents was not previously available to the public, and the agency did not challenge [plaintiff's] description of the released documents as providing 'important new information

> bearing on the controversy over former [District Attorney Jim] Garrison's contention that the CIA was involved' in the assassination plot. . . . [S]ome of the material turned over to [Davy] concerns an event of national importance and is newly released[.]

*Id.* (emphasis added). Similarly, in *Judicial Watch, Inc. v. DHS*, Civ. No. 08-2133, 2009 U.S. Dist. LEXIS 59148 (D.D.C. 2009) this Court concluded that there was a public benefit derived from the case and awarded attorneys' fees to a plaintiff who obtained video footage of an incursion by Mexican police officers into the United States because the footage "contribut[ed] to the public forum and fund of information from which citizens may make political choices." *Id.; see also Campaign for Responsible Transplantation v. FDA*, 593 F. Supp. 2d 236, 241 (D.D.C. 2009)(finding a public benefit and awarding attorneys' fees because plaintiff was a "nonprofit, public interest group designed to alert the public of issues associated with xenotransplantation . . . and the documents released after the plaintiff initiated this lawsuit furthered this mission."). Unlike the cases discussed above, there is no indication in the instant case, either in the plaintiff's briefs or his declarations that the records obtained as a consequence of this litigation are of any public value. "Where, as here, there was no public benefit to the litigation, an award of attorneys' fees

and costs is unwarranted." *Chesapeake Bay Found.*, 108 F.3d at 378.[2]

Even assuming that the remaining factors — which evaluate whether plaintiff seeks to gain a commercial or personal benefit from the requested materials and whether the agency had a reasonable basis for not disclosing the material – would otherwise weigh in favor of an award of attorneys' fees, such a determination would not overcome the Court's conclusion here. "FOIA's fees provision seeks to promote" activity that would "ferret out and make public worthwhile, previously unknown government information[.]" *Davy*, 550 F.3d at 1160. Plaintiff, whose motion for attorneys' fees merely vaguely asserts that the "[t]he new search turned up documents by the United States Department of State, and the United States National Security Agency," fails to persuade the Court that his victory was "not

---

[2] In support of his position that the public derived a benefit from his victory, plaintiff cites to *National Security Archive v. CIA*, 584 F. Supp. 2d 144 (D.D.C. 2008), claiming it is relevant to this case because "the CIA's denial to Plaintiff of news media representative status . . . came at a time that the CIA was also wrongfully denying such a status to the National Security Archive." Pl.'s Mem. at 5. That opinion, however, made no mention of attorneys' fees; rather, it merely held that the CIA wrongfully denied news media status to a particular organization. The Court is not persuaded that the CIA's wrongful denial of news media status on a prior, unrelated occasion is relevant to a determination of whether the plaintiff in the instant case is entitled to attorneys' fees.

insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(II).[3] The Court accordingly declines to exercise its discretion to grant an award of attorneys' fees.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ordered that plaintiff's motion for reconsideration is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

SIGNED:   **Emmet G. Sullivan**
          **United States District Court Judge**
          **October 14, 2011**

---

[3] Plaintiff also argues that that he is entitled to attorneys' fees because the agency changed its position and, after initially denying his request, ultimately granted his request to be placed in the news media fee category. The Court finds this unpersuasive. Not only has plaintiff not persuaded the Court that any public benefit is derived from such a change in position, such a change in position provides merely a personal benefit to plaintiff. Similarly, in *Chesapeake Bay Found.*, the Circuit held that an award of attorneys' fees was not appropriate because the only benefit plaintiff derived from the litigation "was that the [plaintiff] did not have to pay for postage . . . which is hardly a significant public benefit." 108 F.3d at 377. Nor, for the same reasons, is plaintiff's assertion that he is entitled to attorneys' fees simply because the agency performed an additional search persuasive.